JiPLOTKIN, Judge.
Plaintiff M.S. Rau, Inc. (Rau) seeks reversal of a trial court judgment dismissing its petition against defendant Gibson Roofers, Inc. (Gibson) following a trial on the merits in this breach of contract action. For the reasons discussed below, the trial court judgment is reversed and Rau is awarded $10,800 in damages for Gibson’s breach of contract. Facts
Rau operates a family-run antique business in the French Quarter of the City of New Orleans, which has been located at 622-626 St. Peters Street since the mid-1930’s. In 1991, Rau and Gibson entered into a “Proposal and Contract,” containing the following pertinent provisions:
Project: Reroof 622 and 626 St. Peters Revised Proposal
[[Image here]]
GIBSON ROOFERS (hereinafter referred to as “GIBSON”) proposes to furnish the following labor and materials to the Buyer, subject to the Terms and Conditions printed on the reverse side and made a part hereof, at the price set forth below:
1. A. Tear off existing tile down to decking.
B. Install new 43 lb. base felt dry-in.
C. Install new asbestos free slate tile over dry-in.
D. Flash all wall flashing and cap with 24 gauge galvanized metal flashing.
|2E. Bid price includes all gutters, downspouts and vents.
F. Remove all debris upon completion.
[[Image here]]
All for the sum of Eight Thousand, Seven Hundred and NQ/100* * * * * dollars ($8,700.00).
*104 Among the “Terms and Condition printed on the reverse side” of the contract were the following:
2. ACCEPTANCE OF THIS PROPOSAL. This proposal shall become a binding contract on both the buyer and Gibson under the laws of the state where the work is to be done. This Proposal and Contract shall be the entire agreement between the parties, notwithstanding any previous oral or written communications or negotiations, there being no covenants or agreements, inducements guarantees, warranties or considerations other than as set out herein. Any changes in the terms and conditions or any other provisions must be approved in writing by Gibson at its office address shown herein.
[[Image here]]
16. COMPLETION AND ACCEPTANCE. Upon completion, Buyer shall have the opportunity to inspect Gibson’s work. If Buyer believes that Gibson’s work is incomplete or unsatisfactory in some manner, Buyer shall so inform Gibson at that time. Otherwise, Gibson’s work shall be deemed acceptable. No formal written acceptance need be issued by Buyer to constitute acceptance. Final payment or failure by Buyer to inspect the work within then (10) days of completion shall automatically constitute acceptance.
The document was signed by Elias Rau, President on behalf of the “Buyer” and by Tom Costa, Project Manager on behalf of Gibson Roofing.
Following the execution of the Proposal and Contract described above, Gibson Roofers admits that it roofed only the front half of the building located at 622-626 St. Peters. Subsequently, on December 3, 1991, Gibson sent Rau a “Request for Payment” for the project identified as “Reroof of 622-626 St. Peters” requesting $8,700. In response, Rau sent Gibson Roofers a cheek dated December 9, 1991 for $7,814, the sum reached by Rau after making deductions for alleged damages caused by the roofing process. A notation on the check indicated that it was intended as payment “In full of Contract for New Roof at 622-24-26 St. Peter St.” Rau admits that it did not inspect the roof prior to sending the check to Gibson. Gibson did not contest Rau’s deduction of the damages from the amount owed. ^Subsequently, the parties entered another contract for Gibson to reroof an additional property owned by Rau.
Sometime between December of 1991 and May of 1993, Rau experienced several leaks on the back portion of the roof at 622-626 St. Peters. Each time Rau experienced a leak, Gibson was called to make repairs. Finally, a Gibson employee told a representative from Rau that the rear portion of the roof had never been replaced. Thereafter, Rau demanded that Gibson roof the rear portion of the business; Gibson refused, claiming that the contract had been only for reroofing of the front half of the building. Eventually, in May of 1993, Rau hired Carriere-Stumm, Inc. to reroof the rear portion for $9,500. Rau then filed the instant suit to recover the cost of reroofing the rear portion of the building, the cost of other repairs to the building, as well as interest and court costs.
At the trial court level, Gibson attempted to defend against the suit by claiming primarily that the “Proposal and Contract” document was always intended to cover the re-roof of only the front portion of the building. Over the objection of Rau, the trial court admitted parole evidence of the parties’ intentions when they entered the contract. Following the trial, the trial court found in favor of Gibson, dismissing Rau’s case and issuing the following reasons for judgment:
The Court is of the opinion that the parties contracted to replace the front portion only of the roof at 622-626 St. Peter Street and that that was the work performed.
The Court is further of the opinion that the terms and conditions of the written contract entered into by the parties in October of 1991 (Plaintiffs Exhibit # 1) provided, in paragraph # 16, that the Plaintiff had an opportunity to inspect the Defendant’s work to determine if the work performed was complete and satisfactory.
The evidence presented at Trial established that the Plaintiff had an opportunity *105 to inspect the Defendant’s work and that an inspection would not have been inconvenient nor impractical. The failure of the Plaintiff to make the inspection precludes the Plaintiff from later questioning the completeness of Defendant’s work.
The Plaintiffs claim is therefore without merit for the reasons herein provided.

Admission of parol evidence

I4A contract is defined by La.C.C. art. 1906 as “an agreement by two or more parties whereby obligations are created, modified, or extinguished.” Generally, the jurisprudence requires that a contract be interpreted within the “four corners” of the document whenever the words of the contract are “clear, explicit, and lead to no absurd consequences.” Tassin v. Golden Rule Insurance Go., 94-0862, p. 9 (La.App. 1st Cir. 12/22/94), 649 So.2d 1050. When those conditions are met, a court is prohibited from taking parole evidence to explain or contradict the clear meaning of the contract. Id.
We find that the trial court erred in the instant case in allowing Gibson to present parole evidence to vary the terms of the contract which it prepared. Because the contract is “clear, explicit, and lead[s] to no absurd consequences,” the contract should be interpreted as written.
Interpreting the contract as written, Gibson clearly bound itself to reroof the entire building at 622-626 St. Peters. Further, by its own admission, Gibson failed to meet that contractual obligation. Thus, Gibson breached the contract and therefore is oblige for damages caused to Rau as a consequence of its failure to meet its obligations under the contract.

Waiver by failure to inspect

The trial court also found that Rau waived its rights to contest the acceptability of Gibson’s performance when it sent the cheek to Gibson for payment in full on the project. We disagree. Gibson itself breached the primary terms of the contract by failing to fulfill its express obligations under the contractual provisions. Gibson cannot now plead the “small-print” terms of the contract to avoid the consequences of the breach of the primary terms of the same contract. Thus, the fact that Rau paid for the work without inspection does not negate Gibson’s liability for the damages caused by Gibson’s breach of contract.

Damages

The evidence presented at trial indicates that Rau paid Stumm-Carriere $9,500 to reroof the rear portion of 622-626 St. Peters following Gibson’s breach of the contract. | .^Additionally, Rau attempted to prove at trial that it paid $1,300 for repairs to the interior of the building caused by the leaks in the rear portion of the roof. The trial court refuse to admit the evidence of the cost to repair the interior damages; however, the document supporting the recovery of the damages was proffered by Rau. At the appellate level, the parties do not address this issue; however, Rau did request a judgment for the entire amount of its loss, “10,800.” As we believe the trial court improperly excluded the evidence for the repairs to the interior of the business, we award Rau $10,-800 in damages for Gibson’s breach of contract.

Conclusion

Accordingly, the trial court judgment dismissing Rau’s case against Gibson is reversed. Rau is awarded $10,800 in damages caused by Gibson’s breach of contract, plus interest and costs from the date of judicial demand.

REVERSED AND RENDERED.